

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
MICHAEL WERDIGER, INC. and
ADAMAS MANUFACTURING CORPORATION,

                             Plaintiffs,    :  Case No.:

        - against -

LUCENT DIAMONDS, INC. AND ALEX
GRIZENKO,

                             Defendants.
------------------------------------------------------------------- x

## COMPLAINT

Plaintiffs Michael Werdiger, Inc. and Adamas Manufacturing Corporation, by their attorneys, Nixon Peabody LLP, as and for their Complaint against defendants, Lucent Diamonds, Inc. and Alex Grizenko, allege as follows:

### PRELIMINARY STATEMENT

1.    This action is for breach of contract, goods sold and delivered, and unjust enrichment, on unpaid invoices for precious stones and labor purchased from Michael Werdiger, Inc. and Adamas Manufacturing Corporation by Lucent Diamonds, Inc., and to enforce that certain guarantee by Alex Grizenko of the obligations of Lucent Diamonds, Inc.

### THE PARTIES

2.    Plaintiff Michael Werdiger, Inc. ("MWI") is a corporation formed pursuant to the laws of the State of New York, with its principal place of business at 35 West 45th Street, New York, New York. MWI, which was formed in 1954, is in both the industrial and gem diamond businesses.

3. Plaintiff Adamas Manufacturing Corporation ("Adamas") is a corporation formed pursuant to the laws of the State of New York, with its principal place of business at 35 West 45th Street, New York, New York. Adamas, which was formed in 1973, is in both the industrial and gem diamond businesses.

4. Defendant Lucent Diamonds, Inc. ("Lucent"), upon information and belief, is a corporation formed pursuant to the laws of the State of Colorado, with its principal place of business at 7476 East 29th Avenue, Denver, Colorado 80238.

5. Defendant Alex Grizenko ("Grizenko"), upon information and belief, is an individual domiciled in Colorado and residing at 560 Lindsey Road, Golden, Colorado 80401.

## JURISDICTION AND VENUE

6. Lucent contracted with MWI and Adamas in New York, via telephone and written correspondence, and other modes of communication, for Lucent to purchase precious stones (primarily polished diamonds) and related goods and services from MWI and Adamas in New York.

7. Lucent contracts for goods and/or services from entities in the State of New York.

8. Upon information and belief, Lucent expected or should reasonably expect its acts to have consequences in the State of New York.

9. Lucent has agreed that New York law governs the transactions involved in this action, as stated in the terms and conditions of the consignment memoranda and invoices it accepted from MWI and Adamas.

10. Grizenko has irrevocably submitted to the jurisdiction of the Southern District of New York and any New York State court pursuant to the personal guarantee dated December 5,

2002 of the obligations of Lucent described below (the "Guarantee," annexed hereto as <u>Exhibit A</u>).

11. There is complete diversity of citizenship between each of MWI and Adamas, respectively, and Lucent.

12. There is complete diversity of citizenship between each of MWI and Adamas, respectively, and Grizenko.

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000).

14. Venue in this District is proper under 28 U.S.C. § 1391(a)(1), (2), (3), and (c).

## FACTS COMMON TO ALL ALLEGATIONS

15. Lucent purchased product from MWI and Adamas, in the form of polished diamonds and other precious stones, and purchased certain services from MWI and Adamas thereby incurring labor charges, beginning in 2002.

16. A portion of the diamonds were sent to Lucent on a consignment basis. This was done by the use of a written consignment memorandum from MWI or Adamas delivered to Lucent with the diamonds in question. Lucent would subsequently indicate its approval of the particular stones, and MWI or Adamas would issue an invoice.

17. The remainder of the diamonds and services purchased by Lucent were ordered without a consignment or other pre-approval process.

18. With the exception of certain returns, Lucent accepted without objection the goods and services provided by MWI and Adamas.

19. Lucent received and accepted without objection the invoices issued by MWI and Adamas for the goods and services sold by MWI and Adamas to Lucent (collectively, the "Invoices"). The dates and amounts of the Invoices are listed in the annexed Exhibit B.

20. Lucent has accepted and retained the goods and services it purchased from MWI and Adamas, but Lucent has refused to pay the outstanding amount due and owing for such purchases.

21. Neither Lucent nor Grizenko has paid the total amount of $276,530.80 due and owing to MWI and Adamas for the goods and services that Lucent purchased.

22. Pursuant to the terms of the Invoices, Lucent is obligated to pay MWI and Adamas late payment fees of 1% per month on amounts due and owing, respectively, to MWI and Adamas.

23. Pursuant to the terms of the Invoices, Lucent is obligated to reimburse MWI and Adamas for all reasonable expenses of collection of the sums due and owing, respectively, to MWI and Adamas.

24. By letter dated June 10, 2007, MWI, on behalf of itself and Adamas, demanded payment from Lucent and Grizenko for the unpaid-for product and services provided by MWI and Adamas to Lucent in the total amount of $276,530.80 (the "Demand Letter," annexed hereto as Exhibit C).

25. Despite the Demand Letter, Lucent has failed and refused to make any payment to MWI or Adamas since August 2006.

26. Pursuant to the Guarantee, among other things Grizenko personally guaranteed full, faithful and complete performance by Lucent of all covenants, promises, conditions, obligations and warranties on the part of Lucent to be observed and performed in connection

10670661.1

with past, present, and future purchases, including without limitation all sums due under the Invoices. See Exhibit A.

27. On June 22, 2007, Grizenko acknowledged Lucent's default and its failure to pay the Invoices via an email to MWI (copy annexed hereto as Exhibit D). However, despite the Demand Letter, Grizenko has failed to satisfy Lucent's obligations pursuant to the Invoices.

## FIRST COUNT
(Breach of Contract)

28. MWI and Adamas repeat and restate each and every allegation contained in paragraphs 1 through 27 as if fully set forth at length herein.

29. Lucent contracted for the purchase of the product and services in exchange for payment of the amounts stated in the Invoices.

30. Lucent agreed to pay the amount of the Invoices plus late fees, attorney's fees and costs of collection as provided in the Invoices.

31. MWI and Adamas provided the product and services to Lucent as described in the Invoices.

32. MWI and Adamas have performed all obligations they owe, respectively, to Lucent.

33. MWI and Adamas have demanded payment for the product and services, plus all other amounts due under the Invoices. See Exhibit B.

34. Lucent has failed and refused to pay any portion of the sums presently due to MWI and Adamas.

35. Lucent's failure to pay MWI and Adamas as described above is a breach of the agreement between the parties confirmed in the Invoices.

10670661.1

36. As a consequence of that breach, Lucent is liable to MWI and Adamas for the total balance due of at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Invoices.

## SECOND COUNT
(Goods Sold and Delivered)

37. MWI and Adamas repeat and restate each and every allegation contained in paragraphs 1 through 36 as if fully set forth at length herein.

38. The agreed price of the product and services to Lucent was as set forth in the Invoices.

39. The terms of sale were as set forth in the Invoices.

40. MWI and Adamas provided product and services to Lucent.

41. Lucent accepted the product and services.

42. Lucent failed to pay for the product and services.

43. As a consequence of that breach, Lucent is liable to MWI and Adamas for the total balance due of at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Invoices.

## THIRD COUNT
(Unjust Enrichment)

44. MWI and Adamas repeat and restate each and every allegation contained in paragraphs 1 through 43 as if fully set forth at length herein.

45. Upon information and belief, Lucent has used and/or continues to use the products and services provided by MWI and Adamas in the course of Lucent's business.

46. Lucent has benefited from its possession of the product it obtained from MWI and Adamas.

10670661.1

47. Lucent has been unjustly enriched by its possession and use of the product it obtained from MWI and Adamas without having paid the agreed-upon amount.

48. As a result, Lucent is liable to MWI and Adamas for the total balance due of at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Invoices.

## FOURTH COUNT

(Breach of Contract - Liability Under Guarantee)

49. MWI and Adamas repeat and restate each and every allegation contained in paragraphs 1 through 48 as if fully set forth at length herein.

50. The Guarantee is in effect until all obligations of Lucent to MWI and Adamas are satisfied.

51. Adamas is the successor and assign of MWI for purposes of the Invoices issued by Adamas, such that the Guarantee applies to any Invoices issued to Lucent by Adamas.

52. The Guarantee is to be broadly construed in favor of MWI and Adamas. See Exhibit A.

53. In the Guarantee, Grizenko waives, among other things, notice of Lucent's default. See Exhibit A.

54. Lucent defaulted in payment to MWI and Adamas totaling $276,530.80 for product and services sold to Lucent.

55. Grizenko's obligation to pay matures immediately upon demand by MWI and Adamas after default by Lucent, as provided by the Guarantee. See Exhibit A.

56. MWI and Adamas made a demand for payment pursuant to the Demand Letter. See Exhibit B.

57. Grizenko has failed to satisfy his obligations under the Guarantee

58. Grizenko is liable to MWI and Adamas for the total amount owed by Lucent of at least $276,530.80, plus the other amounts due pursuant to the Invoices.

WHEREFORE, MWI and Adamas demand judgment against Lucent and Grizenko as follows:

1. On the First Count, against Lucent in damages for breach of contract in the amount of at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Invoices;

2. On the Second Count, against Lucent for the amount of goods and services sold and delivered of at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Invoices;

3. On the Third Count, against Lucent for the amount of the goods and services, at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Invoices;

4. On the Fourth Count, against Grizenko for liability under Guarantee in the amount of at least $276,530.80, plus late fees, attorney's fees and collection costs as provided under the terms of the Guarantee; and

5. For such further relief as the Court may deem appropriate.

Dated: New York, New York
August ___, 2007

                               NIXON PEABODY LLP

                               By: _____
                                   Robert N. H. Christmas
                                      (RC 6189)
437 Madison Avenue
New York, New York 10022
Tel.: (212) 940-3000

Attorneys for Plaintiffs
Michael Werdiger, Inc. and
Adamas Manufacturing Corporation

10670661.1

9

EXHIBIT A

## PERSONAL GUARANTY

TO INDUCE MICHAEL WERDIGER, INC. (MWI) A NEW YORK CORPORATION, WITH OFFICES AT 35 WEST 45TH STREET, NEW YORK, NEW YORK 10 036, ENGAGED IN THE BUSINESS OF SELLING DIAMONDS, JEWELRY AND/OR PRECIOUS STONES, TO ACCEDE TO THE REQUEST OF

LUCENT DIAMOND'S, INC 12600 WEST COLFAX STREET, LAKEWOOD, CO 80215

TO SELL MERCHANDISE ON CREDIT TO THE CUSTOMER, THE UNDERSIGNED, A PRINCIPAL OF THE CUSTOMER, AND IF THE SPOUSE OF SUCH PRINCIPAL IS A PARTY HERETO, SUCH PRINCIPAL AND SUCH SPOUSE, JOINTLY AND SEVERALLY HEREBY GUARANTEE TO MWI THE FULL, FAITHFUL AND COMPLETE PERFORMANCE BY THE CUSTOMER OF ALL THE COVENANTS, PROMISES, CONDITIONS, OBLIGATIONS AND WARRANTIES ON THE PART OF THE CUSTOMER TO BE OBSERVES AND PERFORMED IN CONNECTION WITH PAST, PRESENT AND FUTURE CUSTOMER'S PURCHASES ORDERS. MWI'S PAST, PRESENT AND FUTURE CONFIRMATIONS OF ORDERS AND INVOICES, AND OTHER PURCHASE TRANSACTIONS OF MERCHANDISE BETWEEN MWI, AS SELLER, AND THE CUSTOMER, AS PURCHASER. INCLUDING, AMONG ALL OTHERS: (I) THE COVENANT TO PAY PROMPTLY TO MWI, WHEN DUE ALL SUMS (WITH INTEREST THEREON, IF ANY) UNDER MWI'S INVOICE: (2) THE REASONABLE EXPENSES OF MWI IN ATTEMPTING TO COLLECT SUCH SUMS, INCLUDING FEES OF ATTORNEYS IN CONNECTION ¡CREW  ¡, AND DAMAGES WHICH MWI MAY SUFFER BY CUSTOMER'S BREACH OF ANY OF THE AFORESAID COVENANTS, PROMISES, CONDITIONS OBLIGATIONS OR WARRANTIES. THE OBLIGATION OF THE UNDERSIGNED TO PAY HEREUNDER SHALL MATURE IMMEDIATELY UPON DEMAND BY MWI UPON THE UNDERSIGNED AFTER DEFAULT BY THE CUSTOMER IN PAYING TO MWI SUCH SUMS OR DAMAGES AFTER SAME ARE DUE AND OWING.

THIS IS A GUARANTY OF PAYMENT AND NOT OF COLLECTION: IT IS NOT A CONDITION TO THE PURSUIT BY MWI OF AS REMEDIES HEREUNDER THAT IT SHALL FIRST EXHAUST OR USE ITS AVAILABLE REMEDIES AGAINST THE CUSTOMER, OR SELL, FORECLOSE ON, OR RESORT TO, HAVE A SECURITY INTEREST, OR PROCEEDS ON ANY GUARANTIES IT MAY HOLD. THIS GUARANTY IS CONTINUING AND IRREVOCABLE WHILE ANY INDEBTEDNESS OR OBLIGATIONS, PRESENT OR FUTURE, OF THE CUSTOMER TO MWI, WHETHER OR NOT DUE, REMAIN UNPAID OR UNPERFORMED. THE UNDERSIGNED WAIVE NOTICE: OF THE ACCEPTANCE OF THIS GUARANTY; OF ALL PAST, PRESENT AND FUTURE TRANSACTIONS (INCLUDING ACTION TAKEN OR OMITTED BY MWI IN ADJUSTING OR HANDLING CLAIMS) BETWEEN MWI AND THE CUSTOMER AS WELL AS BETWEEN MWI AND THE CUSTOMER'S CUSTOMERS; OF ANY EXTENSIONS OR AMENDMENTS OF ANY INVOICE, INCLUDING CHANGES IN THE PURCHASE PRICE OR IN THE DUE DATE OF INVOICE; OF DEFAULTS; OF CONTROVERSIES BETWEEN MWI AND THE CUSTOMER OR THE CUSTOMER'S CUSTOMERS: OF PRESENTMENT, NONPAYMENT AND DISHONOR OF NEGOTIABLE PAPER; AND OF ALL OTHER MATTERS AND ACTIVITIES WHATSOEVER; AND THE UNDERSIGNED CONSENT THAT NONE OF SUCH EVENTS SHALL AFFECT HIS RESPONSIBILITY HEREUNDER.

THIS GUARANTY SHALL BE BROADLY CONSTRUED IN FAVOR OF MWI AND IT SHALL CONTINUE IN EFFECT, DESPITE WHATSOEVER EVENTS OR CIRCUMSTANCES, UNTIL ALL OBLIGATIONS OF THE CUSTOMER TO MWI ARE SATISFIED. THE OBLIGATION OF THE UNDERSIGNED SHALL NOT BE DIMINISHED BY ANY CROSS-CLAIMS THE UNDERSIGNED MAY HAVE OR ASSERT. THE UNDERSIGNED SHALL BE BOUND BY ANY ADMISSIONS OF THE

1

CUSTOMER, ITS EMPLOYEES AND AGENTS, AS WELL AS BY ENTRIES IN THE CUSTOMERS BOOKS AND RECORDS. THE UNDERSIGNED WAIVE A RIGHT OF SUBROGATION AGAINST THE CUSTOMER. ALL CLAIMS OF THE UNDERSIGNED IN ANY SECURITY THEREFOR ARE HEREBY TRANSFERRED TO MWI AS SECURITY FOR THIS GUARANTY.

THE UNDERSIGNED HEREBY CONSENT AND AGREE THAT ANY LEGAL ACTION OR PROCEEDING COMMENCED AGAINST THE UNDERSIGNED BY MWI AND ARISING OUT OF THIS GUARANTY MAYBE INSTITUTED EITHER IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR IN A NEW YORK STATE COURT. THE UNDERSIGNED HEREBY IRREVOCABLY WAIVE ANY OBJECTION WHICH THE UNDERSIGNED MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH ACTION OR PROCEEDINGS, AND IRREVOCABLY SUBMIT TO THE JURISDICTION OF SUCH COURT IN ANY SUCH ACTION OR PROCEEDING. THE UNDERSIGNED HEREBY IRREVOCABLE AUTHORIZE, APPOINT AND DESIGNATE CUSTOMER, AS ITS AGENT (THE "AGENT") UPON WHOM SUMMONS OR LEGAL PROCESS IN ANY SUCH LEGAL ACT)ON OR PROCEEDINGS IN THE SAID UNITED STATES DISTRICT COURT OR NEW YORK STATE COURT MAYBE SERVED, ANY SUCH SUMMONS OR LEGAL PROCESS TO BE CLEARLY MARKED TO INDICATE THAT THE AGENT IS REQUESTED PROMPTLY TO NOTIFY THE UNDERSIGNED OF SUCH SERVICE AND TO FORWARD ANY AND ALL SUCH SUMMONS AND LEGAL PROCESS BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO THE UNDERSIGNED AT HIS LAST KNOWN HOME ADDRESS. THE UNDERSIGNED FURTHER IRREVOCABLY CONSENT AND AGREE THAT SERVICE OF ANY SUCH SUMMONS OR LEGAL PROCESS BY MWI UPON THE AGENT SHALL IN EVERY RESPECT CONSTITUTE SUFFICIENT AND EFFECTIVE SERVICE OF PROCESS UPON THE UNDERSIGNED IN ANY SUCH LEGAL ACTION OR PROCEEDING IN SUCH UNITED STATES DISTRICT COURT OR NEW YORK STATE COURT, WHETHER OR NOT THE AGENT FORWARDS A COPY OF SUCH SUMMONS OR LEGAL PROCESS TO THE UNDERSIGNED. SHOULD THE AGENT BECOME UNABLE OR UNWILLING TO SERVE IN SUCH CAPACITY FOR ANY REASON, THE UNDERSIGNED SHALL FORTHWITH DESIGNATE A NEW AGENT WITHIN THE UNITED STATES BY ADVISING MWI OF THE IDENTITY AND ADDRESS OR THE NEW AGENT BY WRITTEN NOTICE SENT CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, TO MWI'S ADDRESS SET FORTH AT THE BEGINNING OF THIS GUARANTY.

UNLESS AND UNTIL MWI RECEIVES NOTICE AS AFORESAID OF A CHANGE OF AGENT, SERVICE OF THE SUMMONS OR LEGAL PROCESS ON THE LAST NAMED AGENT, SHALL IN EVERY RESPECT CONSTITUTE SUFFICIENT AND EFFECTIVE SERVICE OF PROCESS UPON THE UNDERSIGNED IN ANY SUCH LEGAL ACTION OR PROCEEDING IN SUCH UNITES STATES DISTRICT COURT OR NEW YORK STATE COURT, WHETHER OR NOT THAT AGENT IS THEN UNABLE OR UNWILLING TO SERVE IN SUCH CAPACITY FOR ANY REASON,

EACH OF THE UNDERSIGNED REPRESENTS AND WARRANTS TO MWI THAT THE ADDRESS BELOW HIS OR HER SIGNATURE ON THIS GUARANTY AND ADDRESS IN THE ACKNOWLEDGMENT TO THIS GUARANTY ARE, RESPECTIVELY, HIS BUSINESS AND THEIR DOMICILIARY ADDRESSES.

THIS GUARANTY SHALL BIND THE UNDERSIGNED AND THEIR HEIRS AND PERSONAL REPRESENTATIVES AND SHALL ENURE TO THE BENEFIT OF MWI ITS SUCCESSORS AND ASSIGNS. SHOULD SUIT BE BROUGHT THEREON, BOTH MWI AND THE UNDERSIGNED WAIVE TRIAL OF THE ISSUES BY JURY. THIS GUARANTY IS TO BE GOVERNED BY, INTERPRETED UNDER, AND CONSTRUED BY, THE INTERNAL LAWS OF THE STATE OF NEW YORK.

AS USED HEREIN, THE TERM "UNDERSIGNED" SHALL REFER TO THE NUMBER OF PARTIES WHO EXECUTE THIS PERSONAL GUARANTY, AND IF THIS PERSONAL GUARANTY IS SIGNED BY MORE THAN ONE PARTY, IT SHALL BE THE JOINT AND SEVERAL OBLIGATION OF SUCH PARTIES.

SIGNED ON THE 5th DAY OF December, 2002

NAME: Alex Grizenko
BUSINESS ADDRESS:
12600 W Colfax Ave Lakewood, Co 80215

STATE OR COUNTY OF

ON THE 5th DAY OF Dec 2002    BEFORE ME PERSONALLY CAME Alex Grizenko RESIDING AT 12600 W Colfax Ave. TO ME KNOWN TO BE THE INDIVIDUAL DESCRIBED HEREIN, AND WHO EXECUTED THE FOREGOING INSTRUMENT AND ACKNOWLEDGED THAT THEY EXECUTED THE SAME

NOTARY PUBLIC:

3

EXHIBIT B

ACCOUNTS RECEIVABLE STATEMENT

**Michael Werdiger, Inc.**
35 WEST 45 ST. NEW YORK N.Y. 10036, TEL. 212-869-5160, FAX 212-869-5945

FOR THE ACCOUNT OF

LUCENT DIAMONDS, INC.
7476 EAST 29TH AVENUE

DENVER          CO   80238
UNITED STATES

PAGE: 1

**ACCOUNT NO:** LUCE10
**ACCOUNT NAME:** LUCENT DIAMONDS, INC.
**STATEMENT DATE:** 6/28/07

REMITTANCE ADVICE WITH YOUR PAYMENT
RETURN THIS PORTION
Michael Werdiger, Inc.
35 WEST 45 ST. NEW YORK N.Y. 10036

**STATEMENT DATE:** 6/28/07
**ACCOUNT NO:** LUCE10

| DATE | REF NO | CHARGES AND CREDITS | BALANCE | REF NO | CHECK ITEMS BEING PAID AMOUNT |
|---|---|---|---|---|---|
| 9/10/02  | W14390 | 3,845.25  | 892.56    | W14390 | 892.56    |
| 9/18/02  | W14559 | 9,627.20  | 9,627.20  | W14559 | 9,627.20  |
| 9/30/02  | W14752 | 18,221.25 | 18,221.25 | W14752 | 18,221.25 |
| 10/10/02 | W14888 | 65,342.25 | 65,342.25 | W14888 | 65,342.25 |
| 11/14/02 | W15489 | 39,898.55 | 17,898.55 | W15489 | 17,898.55 |
| 12/09/02 | A16788 | 27,152.50 | 27,152.50 | A16788 | 27,152.50 |
| 1/09/03  | W16211 | 25,242.00 | 25,242.00 | W16211 | 25,242.00 |
| 1/20/03  | W16352 | 15,526.44 | 15,526.44 | W16352 | 15,526.44 |
| 1/30/03  | W16595 | 30,582.00 | 30,582.00 | W16595 | 30,582.00 |
| 2/07/03  | A18010 | 20,853.25 | 20,853.25 | A18010 | 20,853.25 |
| 3/12/03  | A18549 | 26,293.50 | 26,293.50 | A18549 | 26,293.50 |
| 4/10/03  | W17845 | 4,597.50  | 4,597.50  | W17845 | 4,597.50  |
| 4/10/03  | W17854 | 1,962.00  | 1,962.00  | W17854 | 1,962.00  |
| 6/12/03  | W19070 | 12,339.80 | 12,339.80 | W19070 | 12,339.80 |

| CURRENT | 31-60 | 61-90 | 91-120 | OVER 120 | TOTAL | TOTAL |
|---|---|---|---|---|---|---|
| .00 | .00 | .00 | .00 | 276,530.80 | 276,530.80 | 276,530.80 |

EXHIBIT C



# Michael Werdiger, Inc.

35 WEST 45TH STREET ◆ NEW YORK, N.Y. 10036 ◆ TEL 212 869 5160 ◆ FAX 212 391 5741

Mr. Alex Grizenko
President
Lucent Diamonds, Inc.
7476 East 29th Avenue
Denver, CO 80238

Via FedEx

June 10, 2007

Dear Mr. Grizenko,

Lucent Diamonds Inc. has an outstanding balance due us of $276,530.80.

We have tried to work with you for several years to give you time to liquidate your inventory and pay us.

The last payment we received from you was in August 2006.

This is to confirm your conversation with Mr. Leslie Lew and to formally advise you that the account will be put in for collection action if we do not have a substantial payment in the next ten days.

I remind you that you have personally guaranteed the amounts due to Michael Werdiger Inc on the account and that this guaranty will be enforced.

Cordially.


Alan F. Kleinberg

EXHIBIT D

**Alan Kleinberg**

From: Les Lew
Sent: Friday, June 22, 2007 2:27 PM
To: Alan Kleinberg
Subject: FW: accounting

**From:** lucentdi@comcast.net [mailto:lucentdi@comcast.net]
**Sent:** Friday, June 22, 2007 2:14 PM
**To:** Les Lew
**Subject:** accounting

Les,

I do not have any significant money to send you today. Having said that, I believe that we will have cash to send to you by the end of July. We have sent out threatening letters to all of our non-paying accounts, and are hounding them on a weekly basis. We are launching two products with two very well known and respected designers in the middle of July, one high end jewelry line, and one priced at the lower end. We are at the last stage of being accepted as a brand by a major retailer. The strategy that we had over the past three years of selling to smaller retail stores has failed miserably, we realized that the only way to bring the HPHT diamonds to a place of prestige and demand is to find top designers who are ready to work and promote our products, and major retailers who will put some advertising muscle behind these diamonds.

If you need to start legal action on Monday, I really do understand, you have been tolerant far longer than many would have been. But, the last three years have been really tough in my business, and I have had to liquidate all of my personal assets just to stay alive, and to keep the business going.

As a separate issue, can you have your accounting department send us a statement itemizing our payments. We have a discrepancy on our books, I expect that it is our problem.

I propose one last small truce before you go to war, only to the end of July, which is just around the corner. On Monday I can send you all the browns that we still have, I am sitting here reviewing and itemizing them right now. I can also send you HPHT product that you can hold as collateral.

And, for the record, I want to re-state that my intention is to pay you back and not go into bankruptcy.

Can we talk about this.

Alex